**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | | |
|---|---|---|
| Timothy Roy Geiken (R-47103), | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 3:22-cv-50442 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Dr. Satish Patel, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**REPORT AND RECOMMENDATION**

For the reasons stated below, this Court recommends dismissing this case without prejudice based on Plaintiff Timothy Geiken's failure to exhaust available administrative remedies. Any objection to this report and recommendation must be filed by May 3, 2024. *See* Fed. R. Civ. P. 72(b). Failing to object may constitute a waiver of objections on appeal. *See Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**I. Background**

Geiken initiated this 42 U.S.C. § 1983 suit in December of 2022 against several DeKalb County Jail officers and medical personnel. He alleges he received inadequate care for Hepatitis C. Dkt. 1. In March of 2023, the district judge allowed Geiken's amended complaint to proceed against Dr. Satish Patel, Nurse Shannie Ennis, and Chief of Corrections Carolyn Parnow. Dkt. 6. Each Defendant separately answered, and each argued, as one of several affirmative defenses, that Geiken failed to exhaust administrative remedies (the jail's grievance process) for his claim. Dkt. 21, pgs. 4-5; Dkt. 26, pg. 7; Dkt. 32, pgs. 6-7. After discovery was completed on the exhaustion issue, Defendants requested an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742

(7th Cir. 2008), which this Court conducted on February 5, 2024. Based on testimony and evidence presented prior to and at the hearing, the Court finds that Geiken did not exhaust available administrative remedies and recommends dismissal of his amended complaint without prejudice.

## II. Legal Standard

The Prison Litigation Reform Act states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory, and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). "The exhaustion requirement's primary purpose is to 'alert[] the state' to the problem 'and invit[e] corrective action.'" *Turley v. Rednour*, 729 F. 3d 645, 649 (7th Cir. 2013) (quoting *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)).

To exhaust administrative remedies, a prisoner must use "all steps that the agency holds out" and must "do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Section 1997e(a)'s exhaustion requirement, however, applies only for "available" administrative remedies. "[A] prisoner needn't exhaust a remedy that's 'unavailable,' such as when 'prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.'" *Williams v. Rajoli*, 44 F.4th 1041,

1045 (7th Cir. 2022) (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)); *see also Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) ("threats or other intimidation by prison personnel" meant to discourage a prisoner from completing the grievance process can make the process unavailable).

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on Defendants to prove by a preponderance of the evidence that an administrative remedy was available to Geiken and that Geiken failed to exhaust that remedy. *See Hebron v. Baldwin*, No. 17-cv-6254, 2020 WL 757900, at *1 (N.D. Ill. Feb. 14, 2020).

## III. Discussion

Defendants argue that Geiken did not exhaust his administrative remedies because he failed to appeal his only grievance related to the claim in this case.

### A. Evidentiary Hearing and Exhibits

Four witnesses testified at the hearing: DeKalb County Jail Lieutenant Erin McRoberts, Chief of Corrections Carolyn Parnow, Geiken, and Earnell Brown, a pretrial detainee at the jail. Prior to the hearing, the parties submitted exhibits, including Geiken's grievances, letters he sent to Chief Parnow, a page from the jail's handbook, and Brown's affidavit. Dkts. 56-2, 56-3. The testimony and exhibits show the following.

Geiken entered the DeKalb County Jail in August of 2021 and remained there until March of 2023, when he was transferred to the Illinois Department of Corrections. During that time, he filed more than 20 grievances. Dkt. 56-2, pgs. 21-49. Geiken testified at the hearing that he received a copy of the jail's rules and regulations (the handbook) upon entering the jail, and that he knew he had to use the jail's forms and follow its procedures to fully exhaust the grievance

process. That process is set out in the jail handbook and on the grievance form itself.

At the hearing, Lt. McRoberts explained that inmates obtain grievance forms from their housing unit deputy. They fill out the form and return it to the housing unit deputy. If the housing unit deputy can remedy the situation, they do. If not, the grievance moves on to a supervisor, who will fill out their response to the grievance. The supervisor returns the original grievance to the inmate file and provides a copy to the inmate. If the inmate is not happy with the answer given by the supervisor, they are given an area on the form to fill out further information to appeal. A copy of that appeal is also maintained in the inmate's file, and a response to the appeal is provided to the inmate. *See also* Dkt. 56-2, pgs. 17, 22.

The grievance form, which states the same procedures outlined by Lt. McRoberts, is divided into several sections. The form first notifies inmates: "Before completing this form, inmates must attempt to resolve all issues informally by speaking with the deputy … All grievances shall be addressed by a deputy first." Dkt. 56-2, pg. 22. If an inmate's issue is one the deputy cannot resolve, the inmate may then fill out "**Step One**" on the grievance form, which provides a space for the inmate to "[b]riefly state the facts" and the "[r]esolution sought." *Id.* (emphasis in original). The deputy then sends the grievance to the appropriate party for a Step One "Supervisor Response." *Id*. Below that is "**Step Two -** Appeal of Supervisor's decision to Lieutenant or Designee. This must be received within five days of the finding of the original grievance. This will be reviewed and confirmed or denied. You will receive a written response of the finding." *Id.* (emphasis in original).

Only one of Geiken's grievances concerned the claim that is the subject of this case—that

he received inadequate treatment for Hepatitis C at the jail. Dkt. 56-2, pg. 40.[1] In the September 9, 2022 grievance, Geiken complained:

> I was tested for Hepatitis C and tested positive. Currently, the jail won't allow me to get the medication or treatment for it. Untreated, Hep C and fatty liver disease becomes sclerosis and is deadly. I do not want to die from a curable disease. This amounts to deliberate indifference.

Dkt. 56-2, pg. 40.

At Step One, Lt. McRoberts responded to Geiken's grievance on September 13, 2022 as follows: "There is no change to previous answer given by medical staff." *Id.* This response refers to the response Geiken received a few days earlier to his grievance seeking medical attention for chest pains, difficulty breathing, and hyperventilating. *Id.* at 39. Lt. McRoberts responded to that grievance: "you have more medical tests forthcoming." *Id.*

The Step Two portion of the September 9, 2022 grievance form is blank. *Id.* at 40. Defendants contend that the blank Step Two portion indicates Geiken did not appeal Lt. McRoberts' Step One response, and that Geiken thus did not fully exhaust the jail's administrative remedies.

Geiken, however, testified at the hearing that he often did not receive grievances back after submitting them. Specifically addressing the September 9, 2022 Hepatitis C grievance, he initially testified that he never received his grievance back after Lt. McRoberts responded and that his grievance went missing. Geiken later testified that after the lieutenant responded to his grievance, fellow pretrial detainee Brown helped him fill out the Step Two portion of the September 9, 2022 grievance. Geiken testified that he never received the grievance back after that.

[1] At the evidentiary hearing, Defendants' counsel asked Lt. McRoberts about each of Geiken's grievances, but only one grievance concerned his treatment for Hepatitis C. Geiken acknowledged at the hearing that, except for his September 9, 2022 grievance, his grievances were not about Hepatitis C.

According to Geiken, instead of receiving the grievance back with a Step Two response, on September 15, 2022, an officer came to his cell block and said he had to attend a meeting with Chief Parnow, or he would go to segregation until he left the jail. Geiken testified that he was forced into the meeting on September 15 with Chief Parnow and another officer, where he was belittled and yelled at, and he never got his grievance back.

Brown testified that he assisted Geiken in filling out the September 9, 2022 grievance. Brown testified to filling out the grievance form at Step One with Geiken. Brown also testified that Geiken received Lt. McRoberts' response to his grievance. Brown then confirmed that he and Geiken went to the second part of the grievance form where they "responded all the way through with the grievance process." Brown testified that he made sure Geiken sent out the grievance at each stage of the process.

As previously noted, however, the September 9, 2022 grievance's Step Two portion is blank, Dkt. 56-2, pg. 40, and Lt. McRoberts explained that, when an inmate fills out the Step Two portion of a grievance, a copy of the appeal is maintained in the inmate's file and a copy of the response to the appeal is provided to the inmate.

**B. Analysis**

The *Pavey* hearing testimony and evidence presents two possible scenarios: (1) Geiken did not fill out the Step Two portion of his September 9, 2022 grievance, and therefore, did not complete the grievance process; or (2) he filled out the Step Two portion and turned it in, but the grievance went missing and never made it to his inmate file or back to him. In either scenario, Geiken failed to exhaust available administrative remedies.

As to the first scenario, if Geiken did not fill out the Step Two part of the grievance, he did

not use "'all steps that the agency holds out.'" *Woodford*, 548 U.S. at 90 (quoting *Pozo*, 286 F.3d at 1024). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Under this scenario, Geiken did not exhaust the jail's available administrative remedies.

As to the second scenario, Geiken provided inconsistent testimony at the hearing. Geiken originally testified that he never received his grievance back after Lt. McRoberts responded at Step One and that his grievance went missing. However, Geiken also testified that after Lt. McRoberts responded to his grievance, he and Brown filled out the Step Two portion, but he never received the grievance back after that. In considering Geiken's testimony at the hearing, this Court finds his assertion that he filled out the Step Two portion of his September 9, 2022 grievance lacks credibility. *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) ("At Pavey hearings, judges may hear evidence, find facts, and determine credibility."). The Court makes this finding based on the inconsistency in Geiken's testimony as to whether he received Lt. McRoberts' response to his grievance, the lack of detail in his testimony relating to filling out the Step Two portion of his grievance,[2] and the fact that the documentary evidence shows that the grievance at issue does not have the Step Two portion filled out. *See Davis v. Francis*, No. 07-CV-0693-MJR, 2009 WL 4894593, at *2 (S.D. Ill. Dec. 11, 2009) ("[P]laintiff's demeanor and the detailed way in which he testified were indicative of truthfulness.").

However, even crediting Geiken's testimony of what occurred—that he filled out the Step Two appeal-portion of the grievance; turned it in; never received a written response to his appeal,

[2] For example, Geiken did not provide any testimony as to when he received Lt. McRoberts' response, when he met with Brown to fill out Step Two of the grievance, what he and Brown wrote in Step Two, when he filed the grievance after completing Step Two, or who he gave the grievance to.

but instead received a meeting with Chief Parnow—he still did not exhaust available administrative remedies. Geiken was experienced at filing grievances and should have done more to ensure exhaustion of his Hepatitis C claim.

No one disputes that Chief Parnow and Geiken met in person on September 15, 2022. Dkt. 56-2, pgs. 41-45. But Chief Parnow testified that the meeting was to address four grievances Geiken filed on September 11 and 12, 2022, all of which concerned an email between Nurse Ennis and Amy Adams, a mental health provider at the jail, but not his Hepatitis C.[3]

The first of these grievances filed on September 11, 2022 followed DeKalb County Jail's grievance process—Geiken filled out the Step One portion, a sergeant responded on September 13, 2022, and Geiken appealed the response that same day. *Id.* at 41. As to the next three grievances filed on September 12, 2022, Geiken did not initially receive a written response. Instead, he had a forced meeting with Chief Parnow on September 15, 2022. A week later, on September 22, 2022, a sergeant responded: "Chief Parnow advised that she spoke to you in person on 9/15 regarding this matter." Dkt. 56-2, pgs. 42-44. That same day, Geiken filled out the Step Two appeal portion of the grievances requesting "a written response." *Id.* Also on September 22, 2022, Geiken submitted another grievance seeking "a written response from the Chief." *Id.* at 45.[4] The following day on September 23, 2022, Chief Parnow responded to the Step Two portion of the three

[3] Geiken did, however, send a letter to Chief Parnow on September 11, 2022 about both the email and his Hepatitis C, and the September 15, 2022 meeting may have addressed Geiken's letter. Nevertheless, Chief Parnow explained at the hearing that although an inmate can submit a letter, it does not take the place of a grievance form. Geiken also testified that he knew the procedure for filing a grievance at the jail and that there were grievance forms that needed to be filled out to file a grievance.

[4] Considering Geiken's vigilance with following up with the September 12, 2022 grievances after receiving no written responses, the absence of such conduct for the September 9, 2022 grievance further supports this Court's decision not to credit his testimony that his Step Two appeal of that grievance was lost, but rather, that Geiken overlooked appealing it.

grievances: "I met with you in person and informed you that was the response to your grievances." *Id.* at 42-45.

Geiken's requests for written responses was not simply understandable, but also the proper route for him to take. Inmates familiar with their facility's grievance procedures, such as Geiken, "'may not simply sit on [their] hands and abandon the grievance process when [they] receive[] no response.'" *Knox v. Johnson*, No. 20 CV 4225, 2024 WL 383626, at *2 (N.D. Ill. Feb. 1, 2024) (quoting *Goldmsith v. Zolecki*, No. 12 CV 3965, 2013 WL 5699302, at *6 (N.D. Ill. 2013)); *see also Salley v. Parker*, No. 18 CV 5700, 2020 WL 4736412, at *9 (N.D. Ill. Aug. 14, 2020) (collecting cases). If Geiken filled out Step Two of a grievance and received no response—as Geiken and Brown's hearing testimony suggests occurred with the September 9, 2022 Hepatitis C grievance—following up to ensure that Geiken received a written response would have been the appropriate course for Geiken.

But neither the grievances themselves nor the testimony at the hearing indicate that Geiken sought a written response to the September 9, 2022 grievance. He was aware a written response, or at least evidence that he filled out Step Two, was needed to exhaust administrative remedies at the jail. *See* Dkt. 56-2, pgs. 42-45. As indicated by Geiken's requests for written responses to his September 12, 2022 grievances, he knew he had to complete Step Two of the grievance to exhaust administrative remedies at the jail. If he did not receive a written response, or if he believed the grievance with the completed Step Two portion went missing, he should have either requested a written response, requested a copy of the grievance with the Step Two portion filled out, or resubmitted the grievance with the Step Two portion completed. He did this with the three September 12, 2022 grievances, but not with his September 9, 2022 grievance at issue here. Dkt.

56-2, pgs. 42-45.

To the extent Geiken's grievance submitted on September 22, 2022 requesting written responses was meant for not only the September 12, 2022 grievances, but also the September 9, 2022 Hepatitis C grievance, he knew he received no written response or even verification that he submitted the September 9, 2022 grievance with the Step Two portion filled in. Geiken received written responses to his September 12, 2022 grievances but received nothing for his September 9, 2022 grievance. This should have alerted Geiken that he needed to do more with respect to his September 9, 2022 grievance. The record, however, is devoid of evidence of his attempts to fully exhaust the September 9, 2022 grievance.[5]

In short, the hearing testimony and documentary evidence demonstrate that Geiken either did not file a Step Two appeal for his September 9, 2022 grievance, or that he did fill out the Step Two portion of that grievance but failed to sufficiently follow up—as he did with his September 12, 2022 grievances. Based on this record, the Court finds that Defendants have meet their burden to show that Geiken did not exhaust available administrative remedies before filing suit on his underlying claim as required. Therefore, the Court recommends dismissal of this case without prejudice for failure to exhaust. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (stating that because states may allow cures for a failure to exhaust, or may allow litigation in state court without exhaustion, "*all* dismissals under § 1997e(a) should be without prejudice") (emphasis in original).

[5] To the extent Geiken argues (1) that the fact he was belittled and yelled at during the September 15, 2022 meeting with Chief Parnow intimidated him from further pursuing administrative remedies with his September 9, 2022 grievance or (2) that he believed the September 15, 2022 meeting was Chief Parnow's response to Geiken's missing Step Two appeal, his multiple requests for "written responses" following that meeting, Dkt. 56-2, pgs. 42-45, negate such contentions.

**IV. Conclusion**

For the reasons stated above, this Court recommends dismissing this case without prejudice based on Geiken's failure to exhaust DeKalb County Jail's administrative remedies. Any objection to this report and recommendation must be filed by May 3, 2024. *See* Fed. R. Civ. P. 72(b). Failing to object may constitute a waiver of objections on appeal. *See Tumminaro v. Astrue*, 671 F.3d at 633.

Date: April 19, 2024

By: ______________________
Lisa A. Jensen
United States Magistrate Judge